UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LOVETTA VICTORY, individually and as parent of CALEB VICTORY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 3:16-cv-2295 ) Judge Sharp |
| RUTHERFORD COUNTY BOARD OF EDUCATION, | ) ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Rutherford County Board of Education's Motion to 12(b)(6) Dismiss for Failure to State a Claim. (Docket No. 7). Plaintiff Lovetta Victory, individually and as parent of Caleb Victory, filed a Response. (Docket No. 9). Defendant filed a Reply. (Docket No. 10). For the following reasons, the Court will grant Defendant's Motion to Dismiss.

## BACKGROUND[1]

Caleb Victory was a student at Siegel Middle School in Murfreesboro, Tennessee. Siegel Middle School is managed and controlled by Defendant. On September 1, 2015, Caleb was participating in a middle school junior varsity football game. Caleb received a significant blow to his head during a play. After the play was over, Caleb left the field and went to the sidelines where he collapsed and began to experience a seizure caused by the injury to his brain.

Although Defendant staffs the varsity football games with an ambulance or paramedic, it does not staff junior varsity games with such medical professionals. When Caleb began to

---

[1] The relevant facts are taken from allegations in Plaintiff's Complaint, (Docket No. 1), and accepted as true for purposes of a 12(b)(6) motion to dismiss.

1

experience his seizure, the school officials called emergency medical services. While waiting for the emergency medical services to arrive, Caleb remained in a seizure state for over twenty minutes. When the ambulance arrived, the paramedics were able to stop the seizure. Due to the length of time Caleb was in a seizure state, however, he suffered significant and permanent brain damage.

## **LEGAL STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), the Court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007); Inge v. Rock Fin. Corp., 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679; Twombly, 550 U.S. at 556.

## ANALYSIS

Plaintiff brings two claims: a due process claim and an equal protection claim. Both turn on the same issue—whether Defendant's failure to provide on-site paramedics to its junior varsity football program violated the Fourteenth Amendment.

### I. Due Process Claim

Plaintiff argues that Defendant "deprived Caleb Victory of the right to be free from bodily harm as guaranteed under the Due Process Clause of the Fourteenth Amendment" by failing to have a "properly equipped paramedic at non-varsity football games[.]" (Docket No. 1 at 7). The Due Process Clause of the Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Clause exists "to protect the people from the State, not to ensure that the State protect[s] them from each other." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989). The Due Process Clause therefore "does not create an affirmative right to governmental aid." Stiles ex rel. D.S. v. Grainger Cnty., Tenn, 819 F.3d 834, 853 (6th Cir. 2015). States only have obligations to protect the life, liberty, or property of its citizens against invasion by private actors when one of two exceptions applies: when the State "enters into a 'special relationship' with an individual by taking that person into its custody," and when the State "creates or increases the risk of harm to an individual." Id.

Plaintiff essentially alleges two due process violations in the alternative: (1) that Plaintiff "was harmed by the unconstitutional actions of the Defendant itself," and not by those of a third

3

party or (2) that one of the two exceptions applies if the Court finds that the actions were committed by a third party. (Docket No. 9).

> [I]in order to state a claim against a city or a county under § 1983, a plaintiff must show that his injury was caused by an unconstitutional "policy" or "custom" of the municipality. . . . Where, as here, the identified policy is itself facially lawful, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice. "Deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. In other words, the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be "plainly obvious."

Stemler v. City of Florence, 126 F.3d 856, 865 (6th Cir. 1997) (internal citations and quotations omitted).

Plaintiff has not pled facts sufficient to make a plausible claim that Defendant's actions were deliberately indifferent to Caleb's constitutional rights. Even if Defendant's action of not providing medical professionals at junior varsity games was construed as an affirmative action, nothing in Plaintiff's Complaint suggests that there were "plainly obvious" inadequacies in the decision not to provide an ambulance or emergency medical technician at a middle school junior varsity sporting event. While harm to Caleb as a football player may have been foreseeable as Plaintiff argues, mere negligence does not meet the deliberate indifference requirement. Moreover, even if a sports injury was foreseeable, a resulting constitutional violation was not.

### A. Special Relationship

Defendant also did not have a "special relationship" with Plaintiff. A special relationship "arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." DeShaney, 489 U.S. at 200. Special-relationship cases most often arise in the case of prisoner litigation. The state has held a prisoner against his will, therefore limiting his ability to

fend for himself. A state cannot, therefore, restrain a person's liberty and simultaneously "fail[ ] to provide for his basic human needs" without "transgress[ing] the substantive limits of state action set by . . . the Due Process Clause." Id.; see also Estelle v. Gamble, 429 U.S. 97, 103–04 (1976); Youngsberg v. Romeo, 457 U.S. 307, 315–16 (1982). This is why, for example, other courts in this Circuit have found that riding a bus to an extracurricular event does not involve control sufficient to create a special relationship. See Reeves by Jones v. Besonen, 754 F. Supp. 1135, 1140 (E.D. Mich. 1991). Even compulsory school attendance does not give rise to a special relationship: "the parents, not the state, remain the child's primary caretakers." Sargi v. Kent City Bd. of Educ., 70 F.3d 901, 911 (6th Cir. 1995) (citing cases).

The logic underlying the special-relationship doctrine has no application here. The Defendant did not restrain Plaintiff or render him unable to act on his own behalf by placing him in custody. He voluntarily participated in Defendant's football program, which means both that he may have assumed the risk of injury and that he was not restrained against his will. And he had the same access to medical care as if it had been an organized game, unaffiliated with the school. In short, Defendant did not limit Plaintiff's liberty in such a way that the Constitution required it to then provide for his needs.

### B. State Created Danger

The state-created danger theory of constitutional liability, in which the state "creates or increases the risk of harm to an individual," Stiles, 819 F.3d at 853, has three requirements. A plaintiff must establish "(1) an affirmative act that creates or increases the risk to the plaintiff, (2) a special danger to the plaintiff as distinguished from the public at large, and (3) the requisite degree of state culpability." McQueen v. Beecher Cmty. Schs., 433 F.3d 460, 464 (6th Cir. 2006).

5

The first prong is a difficult burden for Plaintiff to meet, as mentioned above, but that analysis can be avoided here because it is clear that the second and third prongs are not met. A "special danger" exists "where the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large." Kallstrom v. City of Columbus, 136 F.3d 1055, 1066 (6th Cir. 1998). What is lacking here is specificity; there is no indication that the failure to provide an on-site paramedic created a *specific* risk for Caleb that would not have existed for the other football participants. The third prong is state culpability. The Sixth Circuit has held that the government's conduct must be "so 'egregious' that it can be said to be 'arbitrary in the constitutional sense.'" Ewolski v. City of Brunswick, 287 F.3d 492, 510 (6th Cir. 2002) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846, 847 (1998)). The factual statements in Plaintiff's complaint do not plead that Defendant acted with the requisite culpability specifically toward Caleb.

Ultimately, where Plaintiff's due process claim runs aground is the Supreme Court's warning that the Fourteenth Amendment cannot be read as creating "a font of tort law to be superimposed upon whatever systems may already be administered by the States." Paul v. Davis, 424 U.S. 693, 701 (1976); see also Baker v McCollan, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."); cf. Nix v. Franklin County School Dist., 311 F.3d 1373, 1376–77 (11th Cir. 2002) (noting the Supreme Court's general policy of avoiding overlap between due process and ordinary tort claims). Accepting Plaintiff's argument would evaporate "any practical distinction between ordinary state-law negligence claims and federal constitutional violations, so long as the negligent party was acting under the color of state law." Reeves by Jones v. Besonen, 754 F. Supp. 1135, 1140 (E.D. Mich. 1991).

## II. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1. To state a claim for an equal protection violation, a complaint must allege that the state has made "distinctions that burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." Radvansky v. City of Olmsted Falls, 395 F.3d 291, 312 (6th Cir. 2005).

"[S]uccessful equal protection claims [can be] brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). Class-of-one claims require plaintiffs to overcome a "heavy burden." Loesel v. City of Frankenmuth, 692 F.3d 452, 462 (6th Cir. 2012). The question is whether Plaintiff pled facts that plausibly suggest Defendant's actions here had no "rational basis."

Rational-basis review is the most lenient of equal protection analyses, and it is clear from the Complaint that Plaintiff cannot overcome it. The parties dispute whether the relevant class of similarly situated individuals is Plaintiff's fellow non-varsity football participants or whether the class includes varsity players, who were provided paramedics on-site at football games, but it does not change the inquiry. (Docket No. 10 at 4). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, 470 F.3d 286, 298 (6th Cir. 2006) (quoting Warren v. City of Athens, 411 F.3d 697, 710 (6th Cir.

2005)). The practice in question must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." LRL Properties v. Portage Metro Hous. Auth., 55 F.3d 1097, 1116 (6th Cir. 1995).

Defendant provides one possible basis in its brief—that varsity athletes would be older, stronger, larger, and more skilled, and therefore more likely to injure one another. Plaintiff has not pled facts to plausibly suggest she will be able to overcome this presumptively valid reason. Maybe a more rigorous practice schedule left varsity players more susceptible to injury. Or it could be that the provision of paramedics is expensive, and paying for paramedics to attend every sporting event would be cost-prohibitive, so defendants provided paramedics only when they could afford it. Cf. Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 489 (1955) ("The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others."). Consequently, Plaintiff's Equal Protection Clause claim must be dismissed.

## **CONCLUSION**

For these foregoing reasons, Defendant's Motion to Dismiss is GRANTED. This case is DISMISSED with prejudice. The Clerk of Court is directed to enter final judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure.

It is SO ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE